FILED

2014 Feb-07  AM 09:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

KAREN G. WRIGHT,          )
                         )
     Plaintiff           )
                         )
v.                       )          Case No. 4:11-CV-3421-WMA
                         )
CAROLYN W. COLVIN,       )
Acting Commissioner of   )
Social Security,         )
                         )
     Defendant.          )

**MEMORANDUM OPINION**

Plaintiff, Karen G. Wright, sought and was denied Social Security disability benefits in an administrative proceeding below. She brings this action for judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, the decision below will be affirmed.

**Background**

Plaintiff is a 50 year old woman with an 11th grade education and past work experience as a fast food worker, deli worker, and fast food shift manager.  On April 21, 2008, she filed an application for disability benefits, claiming that symptoms related to neurofibromatosis, including headaches and back pain, rendered her disabled and unable to work, with a disability onset date of January 18, 2008.  At about the same time, she began a lengthy medical evaluation to address these issues.

Neurofibromatosis is a genetic condition that causes fibromas

1

(benign tumors) to form in those with the condition.  Plaintiff has a history of neurofibromatosis that "covers her entire body," and has previously undergone successful surgery to remove one fibroma from her lung.  R. at 195.  The medical evaluations central to this case concerned fibromas in two especially dangerous areas: plaintiff's brain and her sacrum.

A possible brain issue, a cystic lesion in the medulla, was first discovered by doctors through a March, 2008 MRI scan.  R. at 230.  The lesion was followed closely over at least the next three years (the extent of the record before this court) by three doctors: Dr. Pamela Quinn, a neurologist; Dr. Joel Pickett, a neurospine surgeon; and Dr. Noel Estopinal, a radiation oncologist.  The doctors agreed on a plan of "watchful waiting."  R. at 239.  They felt that the location of the lesion made "surgical or even radiosurgical intervention" too dangerous.  *See id.*  Moreover, they felt that the lesion was "stable" and "asymptomatic."  *Id.*  Subsequent MRIs revealed that the lesion had "not changed appreciably," R. at 227, and that "her headache was stable and well controlled with Tylenol," R. at 288.  In May, 2009, an MRI revealed "some new findings . . . at the C1 level of the brainstem, as well as . . . a questionable third lesion in the right cerebellum," *id.,* but these findings did not change the doctors' watchful waiting approach, *see id.* at 289.

In June, 2009, the same doctors observed a lytic lesion in

plaintiff's sacrum.  R. at 305.  They found that the lesion caused plaintiff "some discomfort in the low back region, but [classified] it as mild to moderate, and . . . not significant when she [took] analgesics."  R. at 290.  Over the course of several examinations, they found that her "clinical symptoms [were] essentially stable." R. at 295.  Finally, they noted that this type of lesion "tend[ed] to be relatively slow growing."  R. at 305.  Thus, as with the earlier lesions, the doctors concluded that in light of the mildness of plaintiff's symptoms, the stability of her disease, and the risks of surgical intervention, a wait-and-see approach was best.  *See* R. at 290.

In December, 2009, plaintiff was evaluated by Dr. Eston Norwood specifically to determine the degree to which her symptoms made her disabled.  R. at 276.  Dr. Norwood's report was generally positive, finding that plaintiff had normal range of motion, gait, strength, proprioception, and reflexes, and that plaintiff could independently perform daily activities such as arising from a sitting position, walking on her heels and toes, and using her hands to open doors and tie her shoes.  R. at 276.  From this, Dr. Norwood found that plaintiff "does not have a neurologic deficit to cause difficulty doing work-related activities including sitting, standing, walking, lifting, carrying, [and] handling objects."  *Id.*

**Administrative Proceedings**

Plaintiff's initial claim was denied by the Social Security

Administration on September 23, 2008.  R. at 73.  Plaintiff
promptly requested a hearing before an Administrative Law Judge
(ALJ), R. at 81-82, and a hearing was held on July 19, 2010, R. at
33-70.  On September 20, 2010, the ALJ issued a thorough opinion
confirming the initial denial.  R. at 10-29.  The ALJ found that
plaintiff's neurofibromatosis and related symptoms did constitute
a "severe" impairment under Social Security definitions, R. at 28
¶ 3, but that the "impairments have not been of such severity that
they could reasonably be expected to give rise to disabling
limitations," *id.* ¶ 5.  He found that plaintiff had "the residual
functional capacity to perform light work as defined [by the Social
Security Administration]", *id.* ¶ 6, and therefore denied
plaintiff's request for disability benefits.  Plaintiff's request
for review of the decision by the Social Security Appeals Council
and that request was denied.  R. at 1-3.  With all administrative
remedies thus exhausted, plaintiff brought this action.

**Discussion**

     The district courts have a limited role in reviewing decisions
of the Social Security Administration.  The court decides only
whether the decision below is supported by substantial evidence and
whether proper legal standards were applied.  *See Bloodsworth v.
Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Plaintiff's only
argument in this appeal is that the ALJ failed to correctly apply
the "pain standard" devised by the Eleventh Circuit to evaluate the

credibility of subjective pain complaints.

In the Eleventh Circuit, a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Under this standard, a claimant testifying about his own pain must show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citation omitted). Once this standard is met, the claimant's subjective testimony "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). The ALJ may still decide not to credit the pain testimony, but "he must articulate explicit and adequate reasons for doing so." *Id.* (citation omitted); *see also Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

According to plaintiff, the pain standard is met in this case because the medical records "document the [p]laintiff's longitudinal attempts to find medical treatment for her disabling symptoms." Pl.'s Br. at 6. In short, plaintiff argues that the

simple fact that she continued to see doctors over the course of years is evidence that she continued to experience severe pain. *See id.* at 5-8.  As plaintiff correctly points out, the Social Security Administration regulations specifically provide that "[i]n general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms . . . ."  SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996).

Plaintiff's error is her assumption that providing some objective evidence to meet the "pain standard" is the end of the inquiry.  The ALJ remained permitted to choose not to credit the pain testimony so long as he "articulate[d] explicit and adequate reasons for doing so."  *Holt*, 921 F.2d at 1223.  The ALJ in this case specifically recognized and cited the Eleventh Circuit's pain standard cases and SSR 96-7p.  *See* R. at 24-25.  With these rules in mind, he took care to conclude that plaintiff's pain testimony was "not fully credible," but only after a detailed and thorough consideration of "the medical history, the reports of the treating and examining practitioners, and the clinical findings made on examination."  R. at 25.  He found significant the facts that the doctors never deviated from their "conservative and non-invasive plan of treatment," *id.*; that plaintiff "consistently reported much

milder pain to her doctors" than she did to the Social Security Administration, *id.*; that her headaches were relieved by Tylenol, *id.*; and that her range of motion was good, *id.* The ALJ thus had "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and in fact compelling reasons, for his ultimate conclusion that "susbstantial evidence does not support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations as alleged by the claimant," R. at 26.

**CONCLUSION**

The ALJ decision below applied the correct law and was supported by substantial evidence. The decision of the Commissioner is therefore due to be affirmed. The court will contemporaneously issue an order consistent with this opinion.

DONE this 7th day of February, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE